UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-62900-LENARD/GOODMAN

SCENIC HEALTH ALLIANCE,
INC., (a/a/o Era Lowry) and all
others similarly situated,

      Plaintiff,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

      Defendant.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND (D.E. 9)

**THIS CAUSE** is before the Court on Plaintiff Scenic Health Alliance, Inc.'s Motion for Remand, ("Motion," D.E. 9), filed January 6, 2015.  Defendant, State Farm Mutual Automobile Insurance Company, filed a Response on January 30, 2015, ("Response," D.E. 19), to which Plaintiff filed a Reply on February 6, 2015, ("Reply," D.E. 28).  With leave of the Court, Defendant filed a brief Sur-reply on February 12, 2015.  ("Sur-reply," D.E. 38.)  Upon review of the Motion, Response, Reply, Sur-reply, and the record, the Court finds as follows.

## I.    Background

This is a putative class action arising out of State Farm's systematic denial of claims under its Personal Injury Protection ("PIP") and/or Medical Payments ("MedPay") insurance coverage when one of its insureds does not receive initial medical services

within fourteen (14) days of an automobile accident.  (See Mot. at 1.)  Florida law permits State Farm to deny such coverage.  See Fla. Stat. § 627.736(1)(a)(3) (the "Initial Treatment Provision").

On November 12, 2014, Plaintiff filed a one-count Class Action Complaint in Florida state court seeking: (1) a declaration that State Farm cannot deny payments under the Initial Treatment Provision; (2) a declaration that the Initial Treatment Provision is unconstitutional; (3) an injunction prohibiting State Farm from denying future claims; (4) supplemental relief requiring State Farm to recalculate all submitted claims that were denied based upon the Initial Treatment Provision; and (5) supplemental relief requiring State Farm to disseminate an "explanatory notice" informing Class Members of the Court's Judgment.  (Compl., D.E. 1-2 ¶ 59(c).)  The Complaint also seeks class certification for persons who were denied PIP or MedPay coverage by State Farm based upon the Initial Treatment Provision  (Id. ¶ 37.)  The Complaint contains no claim for monetary damages.

On December 22, 2014, State Farm removed this matter to this Court pursuant to the Class Action Fairness Act ("CAFA"), stating that "this is a putative class action with more than 100 putative class members that are seeking to recover in excess of $5,000,000 in the aggregate, and there is minimal diversity."  (Notice of Removal, D.E. 1 ¶ 9.)  To establish the amount in controversy, State Farm provided a Declaration from Donald Vinciguerra—a State Farms claims analyst—stating that the amount of bills State Farm

has denied based upon the Initial Treatment Provision equals $4,761,977.91.[1]  (Resp. at 6 (citing Supp. Decl. of Donald Vinciguerra ("Vinciguerra Decl."), D.E. 19-1 ¶ 6).) According to State Farm, this amount plus (1) the value of the injunctive relief Plaintiff seeks (estimated at $202,800 per month), (2) the value of the "supplemental relief" Plaintiff seeks (estimated at $257,000), and (3) attorneys' fees (estimated at $150,000), exceeds the $5 million threshold for federal jurisdiction under CAFA.  (See Notice of Removal ¶¶ 23-31.)

On January 6, 2015, Plaintiff filed the instant Motion for Remand.  (D.E. 9.) Plaintiff does not dispute that there are over 100 persons in the class and that diversity exists among the parties, but argues that Defendant has failed to sustain its burden of establishing that the amount in controversy exceeds $5 million.  (Mot. at 3.)

## II.    Legal Standard

"[W]hen a notice of removal's allegations are disputed, the district court must find ''by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold.'"  Dudley v. Eli Lilly & Co., 778 F.3d 909, 913 (11th Cir. 2014) (quoting Dart Cherokee Basin Operating Co., LLC v. Owens, __ U.S. __, 135 S. Ct. 547, 553-54 (2014) (quoting 28 U.S.C. § 1446(c)(2)(B))); see also  Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010) ("'Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of

---

[1]      In his original Declaration attached to State Farm's Notice of Removal, Vinciguerra calculated the claims denied at $4,867,475.41.  (See D.E. 5 ¶ 4.)  However, this amount "incorrectly included some bills where State Farm had: (a) originally denied payment of the bills . . . ; but (b) ultimately reconsidered the bills and made a payment."  (Response at 6.)

the evidence that the amount in controversy exceeds the jurisdictional requirement.'") (quoting <u>Williams v. Best Buy Co., Inc.</u>, 269 F.3d 1316, 1319 (11th Cir. 2001)).  That is, the defendant must prove "'that the amount in controversy <u>more likely than not</u> exceeds the [applicable] jurisdictional requirement.'"  <u>Pretka</u>, 608 F.3d at 752 (quoting <u>Tapscott v. MS Dealer Serv. Corp.</u>, 77 F.3d 1353, 1356-57 (11th Cir. 1996)).  "[I]n making this calculation, '[a] court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence.'"  <u>Dudley</u>, 778 F.3d at 913 (quoting <u>S. Fla. Wellness, Inc. v. Allstate Ins. Co.</u>, 745 F.3d 1312, 1315 (11th Cir. 2014)).  To satisfy its burden, a defendant "may introduce [its] own affidavits, declarations, or other documentation[.]"  <u>Pretka</u>, 608 F.3d at 755.  Finally, the Court must bear in mind that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."  <u>Dart</u>, 135 S. Ct. at 554.

## III.   Discussion

"CAFA grants federal district courts jurisdiction over class actions where (1) <u>any</u> member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant, (2) the aggregate amount in controversy exceeds $5 million, and (3) the proposed plaintiff class contains at least 100 members."  <u>Dudley</u>, 778 F.3d at 911 (citing 28 U.S.C. § 1332(d)(2), (5)-(6); <u>S. Fla. Wellness</u>, 745 F.3d at 1315).  Plaintiff argues that remand is required because State Farm has failed to sustain its burden of proving that the amount in controversy exceeds $5 million.  (Mot. at 5-9.)  First, it argues that the value of the injunctive and declaratory relief demanded in the complaint is too speculative to be

included in the amount in controversy calculation.  (Id. at 5-8.)  Second, it argues that State Farm overcalculated the at-issue attorneys' fees at $150,000 because "only those amounts of fees expended as of the date of removal are included in the jurisdictional amount."  (Id. at 8 (citations omitted).)  Third, it argues that the $4,761,977.91 figure is speculative because it is unclear whether the claims included therein are "based on the amounts that are properly payable under the PIP statute, including whether those bills are limited by the fee schedule in Florida Statutes."  (Id. at 9.)

In Response, State Farm argues that the bills denied based on the Initial Treatment Provision exceed $4.76 million, the value of the injunctive relief will likely exceed $200,000, the requested supplemental relief will likely exceed $250,000, and attorneys' fees through trial will likely succeed $150,000—thus, it argues, the amount in controversy exceeds $5 million in the aggregate.  (See Resp. at 5-18.)  Because it is Defendant's burden to prove the amount in controversy exceeds the jurisdictional threshold, the Court will address the Parties' arguments in the order presented by Defendant.

### a.    Amount of bills State Farm denied pursuant to the Initial Treatment Provision: $4,761,977.91

Florida Statute § 627.736(1)(a) states that an insurance company must provide certain coverage to certain individuals who receive "initial services and care . . . within 14 days after the motor vehicle accident."  It is undisputed that State Farm systematically denies coverage under this provision if the individual does not receive initial medical services and care within 14 days of an accident.  (See Mot. at 1.)  State Farm calculates

that from January 1, 2013 through December 22, 2014 (the date of removal), it denied

bills totaling $4,761,977.91 because the insured did not receive initial medical services

and care within 14 days of the accident.  (See Resp. at 5 (citing Vinciguerra Decl. ¶ 6).)

Pursuant to section 627.736(1)(a), Florida Statutes, the general rule in Florida is

that an insurer must pay 80% "of all reasonable costs for medically necessary treatment

resulting from an automobile accident, subject to certain limits."  S. Fla. Wellness, , 745

F.3d at 1314.  However, section 627.736(5)(a)(1) includes a permissive fee schedule

which authorizes motor vehicle insurers to limit certain coverage to 80% of 200% of the

Medicare allowable rates for those services.  State Farm utilizes the statutory fee schedule

in its PIP/MedPay reimbursements.  (See Lowry Policy, D.E. 16-1 at 3 ("IMPORTANT

NOTICE- Under No-Fault Coverage, the only medical expenses that are payable under

the Florida Motor Fehicle No-Fault Law.  The most we will pay for such reasonable

medical expenses is 80% of the 'schedule of maximum charges' found in the Florida

Vehicle No-Fault Law . . . ."); id., D.E. 16-2 at 2 (*We* will limit payment of **Medical**

**Expenses** described in the **Insuring Agreement** of this policy's No-Fault Coverage to

80% of a properly billed and documented *reasonable charge*, but in no event will *we* pay

more than 80% of the . . . . *No-Fault Act* 'schedule of maximum charges' including the

use of Medicare coding policies and payment methodologies . . . .").)

Accordingly, Plaintiff argues that the $4,761,977.91 amount is overstated and

speculative because Vinciguerra's Declaration does not state whether that figure is

"based on the amounts that are properly payable under the PIP statute, including whether

those bills are limited by the fee schedule in Florida Statutes."  (Mot. at 9.)  State Farm

argues that this distinction is irrelevant because the total amount denied by State Farm defines its exposure in the event that the provision is ruled unconstitutional: "The demand letter attached to the Complaint makes clear that SHA is seeking the full amount that it billed State Farm; not just the amount 'limited by the fee schedule.'"  (Resp. at 7-8.) State Farm argues that whether the full amount billed is ultimately limited by the fee schedule is an affirmative defense that need not be considered for amount-in-controversy purposes.  (Id. at 8.)  Plaintiff characterizes Defendant's argument as "ridiculous," and maintains that application of the fee schedule is mandatory in determining the amount in controversy.  (Reply at 4-5.)  It argues that "[u]nder a policy with a fee schedule, the billed charges are largely irrelevant, because the amount that is payable under the policy is governed by the fee schedule."  (Id. at 2.)

"The value of injunctive or declaratory relief for amount in controversy purposes is the monetary value of the object of the litigation that would flow to the plaintiffs if the injunction were granted."  Leonard v. Enter. Rent a Car, 279 F.3d 967, 973 (11th Cir. 2002).  "[I]f the value of the underlying claim exceeds the insurer's potential liability under the policy, the amount in controversy in the declaratory judgment action is the insurer's potential liability under the policy—the policy limit."  N.H. Indem. Co. v. Scott, No. 8:11–cv–943–T–23MAP, 2012 WL 6537098, at *2 (M.D. Fla. Dec. 14, 2012) (citing Payne v. State Farm Mut. Auto. Ins. Co., 266 F.2d 63, 65 (5th Cir. 1959)[2]; see also 14AA Charles Alan Wright, et al., Federal Practice and Procedure § 3710 (4th ed. 2011) ("[I]f

_____

[2]      In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

7

the claim exceeds the policy limits, the maximum limit of the insurer's liability under the policy for the particular claim is the measure for determining whether the statutorily required amount in controversy is satisfied.") (citations omitted); cf. New York Life Ins. Co. v. Viglas, 297 U.S. 672, 678 (1936) ("For breach short of repudiation or an intentional abandonment equivalent thereto, the damages under such a policy as this do not exceed the benefits in default at the commencement of the suit.").  Accordingly, the Court finds that the amount in controversy is State Farm's maximum liability under the policy limits set by the statutory fee schedule.  See N.H. Indem., 2012 WL 6537098, at *2; Wright, et al., Federal Practice and Procedure § 3710 (4th ed. 2011).

Vinciguerra's Declaration states merely that "the amount of bills denied . . . totaled $4,761,977.91," (D.E. 19-1 ¶ 6.); it does not state whether this figure accounts for the fee schedule reductions (or other policy limitations) which limit State Farm's liability. Indeed, State Farm concedes that the $4,761,977.91 figure is not based on the reduced amounts for which it would be liable under the policy limits set by the statutory fee schedule.  (See Response at 7-8.)  State Farm has not identified, much less proved by a preponderance of the evidence, a set of circumstances under which it could be liable for the full $4,761,977.91 in denied benefits.[3]  Accordingly, the Court finds that State Farm has not proved by a preponderance of the evidence that its maximum liability under the limits imposed by the policy is $4,761,977.91.

[3]    Notably, the Complaint does not seek a declaration requiring State Farm to pay all of the claims as submitted; rather, it seeks a declaration that State Farm cannot deny claims based on the Initial Treatment Provision and requiring State Farm to "recalculate" the submitted claims.  (Compl. ¶ 59(c).)

8

The Court pauses to note that applying statutory fee schedule limitations for amount in controversy purposes is not an academic exercise—it is a major part of the equation and potentially jurisdiction determinative.  In South Florida Wellness, Inc. v. Allstate Insurance Co., South Florida Wellness sought reimbursement from Allstate pursuant to the general rule set forth in Florida Statute § 627.736(1)(a), i.e., 80% of all reasonable costs for medically necessary treatment.  745 F.3d at 1314.  Allstate instead reimbursed South Florida Wellness under the statutory fee schedule contained in Florida Statute § 627.736(5)(a).  Id. at 1313-14.  South Florida Wellness filed a putative class action against Allstate in state court seeking a declaration that Allstate failed to clearly and unambiguously indicate in the insurance policy that it was going to limit its payments to the statutory fee schedule, as required by the Florida Supreme Court's decision in Geico General Insurance Co. v. Virtual Imaging Services, Inc., 141 So.3d 147 (Fla. 2013).  Id. at 1314.  Allstate removed the case under CAFA and submitted the affidavit of an employee who, like Vinciguerra, was familiar with PIP claim-related business records maintained by Allstate.  Id.

> She calculated that Allstate had paid out $126,474,216.25 in benefits for those claims based on the fee schedule in § 627.736(5)(a).  She also calculated that if Allstate had not limited payment based on § 627.736(5)(a), then the putative class members would have been entitled to $194,651,033.94 in benefits (80% of the billed amounts). Allstate maintained that the amount in controversy was the difference between those two figures—$68,176,817.69—because that is the additional amount of benefits the putative class members would be eligible to recover in the event that they received the declaratory judgment.

9

Id. Thus, in South Florida Wellness, the difference between reimbursement under the general rule in Section 627.736(1)(a) and reimbursement under the statutory fee schedule in Section 627.736(5)(a) was over 35%. See id.

Here, too, Plaintiff billed State Farm under the general rule in Section 627.736(1)(a). (See D.E. 1-2 at 23.) However, pursuant to the insurance policy, State Farm was only required to reimburse at the lower rates established by the statutory fee schedule in Section 627.736(5)(a). (See Lowry Policy, D.E. 16-1 at 3; D.E. 16-2 at 2.) Applying a 35% difference to this case would reduce State Farm's figure by $1,666,692.27—from $4,761,977.91 to $3,095,285.64, although even these numbers are a product of "impermissible speculation." Lowery v. Ala. Power Co., 483 F.3d 1184, 1220 (11th Cir. 2007); see also Pretka, 608 F.3d at 752.

In any event, the Court finds that State Farm has failed to prove by a preponderance of the evidence that it is potentially liable under its insurance policy for $4,761,977.91 in bills denied. See N.H. Indem., 2012 WL 6537098, at *2 (citing Payne, 266 F.2d at 65); Wright, et al., Federal Practice and Procedure § 3710 (4th ed. 2011). The Court further finds that any amount it might assign based on the record evidence and the figures provided in South Florida Wellness would be impermissibly and "hopelessly speculative." Porter v. MetroPCS Commc'n's Inc., 592 F. App'x 780, 783 (11th Cir. 2014) (citing Lowery, 483 F.3d at 1220). "While absolute certainty is neither attainable nor required, the value of declaratory or injunctive relief must be 'sufficiently measurable and certain' to satisfy the amount-in-controversy requirement." S. Fla. Wellness, 745 F.3d at 1316 (quoting Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1269 (11th Cir.

2000)).  Here, without calculations based on the fee schedule, the value of the declaratory relief is simply too uncertain and speculative to include in amount in controversy calculation.  See Mann, 505 F. App'x 854, 856 (11th Cir. 2013) ("When the value of injunctive relief is 'too speculative and immeasurable,' it will not be included in the amount in controversy.") (quoting Leonard, 279 F.3d at 973).

**b.    Injunctive relief**

Plaintiff requests an injunction prohibiting State Farm from denying future claims based on the Initial Treatment Provision.  (See Compl. ¶ 59(c)(5).)  Defendant appears to argue that the value of injunctive relief is $202,800 per month, as this is the amount of bills it denies every month based on the Initial Treatment Provision.  (See Notice of Removal ¶ 26; Response at 11.)[4]  Plaintiff argues that this relief is too speculative to be included in the amount in controversy calculation because, for example, the insureds may stop purchasing State Farm's policy, physicians may stop providing treatment to State Farm's insureds, and State Farm may stop denying bills based on the Initial Treatment Provision.  (Mot. at 5-7 (citing Mann, 505 F. App'x 854; Advantage Open MRI, Inc. v. State Farm Mut. Auto. Ins. Co., No. 8:08–CIV–2308–T–17–EAJ, 2009 WL 2958659 (M.D. Fla. Sept. 15, 2009)).)  Defendant argues that it will more likely than not continue denying bills based on the Initial Treatment provision, and it is unlikely that insureds will cancel (or not renew) their state-required PIP insurance.  (Resp. at 13.)

---

[4]    It only "appears" that this is State Farm's argument because it states that it "has been taking such reductions" at a rate of $202,800 per month.  It is not clear what "reductions" State Farm is taking if it is simply refusing to pay the bill submitted by the insured or medical provider.

"For amount in controversy purposes, the value of injunctive or declaratory relief is the 'value of the object of the litigation' measured from the plaintiff's perspective." Morrison, 228 F.3d at 1268 (quoting Ericsson GE Mobile Commcn's, Inc. v. Motorola Commcn's & Elecs., Inc., 120 F.3d 216, 218-20 (11th Cir. 1997)). "'In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted.'" Id. (quoting Cohen v. Office Depot, Inc., 204 F3d 1069, 1977 (11th Cir. 2000)). The Defendant must show that "the benefit plaintiffs will obtain from the injunction is 'sufficiently measurable and certain to satisfy the . . . amount in controversy requirement." Lutz v. Protective Life Ins. Co., 328 F. Supp. 2d 1350, 1359 (S.D. Fla. 2004) (quoting Morrison, 228 F.3d at 1269 (quoting Ericsson, 120 F.3d at 221)). "If the monetary value of the requested injunctive relief is 'too speculative and immeasurable to satisfy the amount in controversy requirement,' this Court need not even address whether the injunctive relief should be aggregated." Id. (quoting Leonard, 279 F.3d at 973).

The Court finds that State Farm has failed to prove by a preponderance of the evidence that the value of the injunction equals $202,800 per month. In fact, there is no evidence regarding the value of the injunction as it relates to future claims. Although the Notice of Removal alleges that State Farm denies bills totaling $202,800 per month based on the Initial Treatment Provision, it cites to no affidavit, declaration, transcript, spreadsheet, or other evidence supporting this statement. The Court reviewed all of the relevant Exhibits attached to the Notice of Removal, as well as Vinciguerra's Supplemental Declaration, and none of them address the value of the injunction.

12

In calculating the amount in controversy, "'[a] court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence.'"  <u>Dudley</u>, 778 F.3d at 913 (quoting <u>S. Fla. Wellness</u>, 745 F.3d at 1315).   To satisfy its burden, a defendant "may introduce their own affidavits, declarations, or other documentation[.]"  <u>Pretka</u>, 608 F.3d at 755.   Here, Defendant has offered <u>nothing</u> to support its statement that it denies $202,800 worth of bills per month. Accordingly, it has not proved the value of the injunction by a preponderance of the evidence, and the Court therefore will not include it in the amount in controversy calculation.  <u>See</u> <u>Mann</u>, 505 F. App'x at 856 ("When the value of injunctive relief is 'too speculative and immeasurable,' it will not be included in the amount in controversy.") (quoting <u>Leonard</u>, 279 F.3d at 973); <u>see also</u> <u>Lutz</u>, 328 F. Supp. 2d at 1359.

### c.    Supplemental relief and attorneys' fees

State Farm estimates that it would cost approximately $257,000 in additional salary cost for State Farm to reconsider and recalculate the payment of benefits associated with the claims it denied based on the Initial Treatment Provision.  (<u>See</u> Decl. of Travis Houlihan, D.E. 1-8 ¶¶ 5-6.)  It also estimates that reasonable attorneys' fees will likely exceed $150,000, based on recent class action settlements involving similar issues regarding reimbursement and payment of Florida PIP benefits.  (<u>See</u> Notice of Removal ¶ 30; Response at 15-16 (citing <u>Total Care Chiro. VII, Inc. v. Mercury Ins. Co.</u>, Case No. 10-012853 (19) (Fla., 17th Jud'l Cir. July 22, 2014) (fee award to class counsel, which included the counsel involved in this case, was $640,000); <u>MRI Assocs. of St. Pete, Inc. v. First Floridian Auto & Home Ins. Co.</u>, Case No. 10-CA-013131 (C) (Fla., 13th Jud'l

Cir. July 11, 2014) (fee award of $550,000); <u>MRI Assocs. of St. Pete, Inc. v. First Acceptance Ins. Co.</u>, Case No. 10-CA-03919 (F) (Fla., 13th Jud'l Cir., May 29, 2014) (fee award of $295,000); <u>MRI Assocs. of St. Pete, Inc. v. Dairyland Ins. Co.</u>, Case No. 8:11-CV-665-JSM-MAP (M.D. Fla. Jan. 23, 2013) (fee award of $182,058).

Plaintiff argues that the $257,000 estimated for recalculating the claims cannot be included in the amount in controversy calculation because it is a cost of compliance. (Reply at 9 (citing <u>Cohen</u>, 204 F.3d at 1079 n.8 ("The potential cost of compliance to the defendant, however, is irrelevant in determining the value of the benefit that would be obtained by the plaintiff from an injunction.").) It further argues that only attorneys' fees up to the time of removal can be included in the amount in controversy. (<u>Id.</u> at 7.)

Having previously found that State Farm failed to carry its burden of proof with respect to the amount of bills denied and the value of injunctive relief, the Court need not address "supplemental relief" and attorneys' fees because even accepting State Farm's arguments, their sum total would not approach, much less exceed, the $5 million amount in controversy threshold for federal jurisdiction under CAFA.

## IV.    Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.    Plaintiff's Motion for Remand (D.E. 9), filed January 6, 2015, is **GRANTED**;

2.    This case is **REMANDED** to the Circuit Court for the Seventeenth Judicial Circuit in and for Broward County, Florida. The Clerk is directed to take

14

all necessary steps and procedures to effect remand of the above-captioned action;

**3.**      All other pending motions are **DENIED AS MOOT**; and

**4.**      This case is now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 24th day of August, 2015.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**